UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DEREK M.,                                              Case No. 3:20-cv-01713-AC

                          Plaintiff,                        OPINION AND ORDER

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                     Defendant.

_____

ACOSTA, Magistrate Judge:

     Plaintiff Derek M.[1] seeks judicial review of the final decision of the Commissioner of

Social Security ("Commissioner") denying his application for a period of disability and disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-403.   This court has

jurisdiction pursuant to 42 U.S.C. § 405(g).   All parties have consented to allow a Magistrate

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the
last name of the non-governmental party in this case.

Judge to enter final orders and judgment in this case in accordance with 28 U.S.C. § 636(c).   The

Commissioner's decision is reversed and remanded for an immediate calculation of benefits.

## *Procedural Background*

On March 28, 2018, Plaintiff protectively filed a Title II application for a period of

disability and disability benefits, alleging disability beginning December 27, 2017.   Tr. Soc. Sec.

Admin. R. ("Tr.") 16, ECF No. 15.   Plaintiff's claims were denied initially and upon

reconsideration.   Plaintiff filed a request for a hearing before an administrative law judge ("ALJ").

The ALJ held a hearing on March 3, 2020, via videoconference, at which Plaintiff appeared with

his attorney and testified.   Tr. 16.   A vocational expert ("VE") also appeared and testified at the

hearing.   Tr. 16.   On March 25, 2020, the ALJ issued an unfavorable decision.   Tr. 16.   Plaintiff

requested review of this decision on March 27, 2020.   Tr. 153-55.   The Appeals Council denied

Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the

Commissioner for purposes of review.   Tr. 1-4.

Plaintiff was born in 1975 and was forty-two years old on the alleged onset date of

disability, and forty-three years old on the date of the ALJ's decision.   Tr. 64.   He has at least a

high school education, is able to communicate in English, and has past relevant work as a sales

counter clerk.   Tr. 24.

## *The ALJ's Decision*

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful

employment since December 27, 2017.   Tr. 18.   At step two, the ALJ determined that Plaintiff

has the following severe impairments:   chronic pancreatitis/alcohol-induced pancreatitis;

gastroesophageal reflux disease; and irritable bowel disease.   Tr. 18.   At step three, the ALJ

determined that Plaintiff's severe impairments, singly or in combination, do not meet or medically

equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526), or any other listed impairment.   Tr. 20.

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work and can occasionally-to-frequently stoop, kneel, crouch, and crawl.   Tr. 20.   At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a counter clerk, concluding the work did not require the performance of work-related activities precluded by Plaintiff's RFC.   Tr. 24.   At step 5, the ALJ made an alternative finding that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in the national economy that Plaintiff can perform, including such relevant occupations as cafeteria attendant, fast food worker, and cleaner/housekeeper.   Tr. 24-25.   Therefore, the ALJ found that Plaintiff was not disabled under the Act and denied his application for disability benefits.   Tr. 25.

*Issues for Review*

Plaintiff asserts the ALJ:   (1) improperly evaluated his subjective symptom testimony; (2) improperly evaluated the opinion of Plaintiff's treating pain management specialist, Machelle Dotson, PA-C; and (3) developed an RFC and posed a hypothetical to the vocational expert that failed to include all of his limitations.   (Pl. Opening Br. at 1, ECF No. 16).   Plaintiffs also asserts that the administrative proceedings were tainted by the unconstitutional appointment of a former Social Security Commissioner.   (Pl. Reply Br. at 7-8, ECF No. 18).   The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error.

*Preliminary Procedural Matter*

Plaintiff asserts the court must remand this case for rehearing before a new ALJ because the Social Security Act's provision governing removal of the Commissioner, 42 U.S.C. § 902(a)(3) ("removal provision"), violated the separation of powers.   Plf. Reply Brief at 6-7 (citing *Seila Law*

Page 3  – OPINION AND ORDER

*v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020); *Collins v. Yellen*, 141 S.Ct. 1761 (2021)).    Plaintiff contends that the removal provision renders former Commissioner Andrew Saul's appointment and tenure unconstitutional, thus invalidating any authority he purported to delegate to the ALJ and Appeals Council that considered Plaintiff's case.    *Id.* Plaintiff asserts the ALJ and Appeals Council therefore lacked authority to adjudicate and review his claim for disability, so remand is necessary.

While conceding the removal provision is unconstitutional to the extent it purports to limit the President's authority to remove a Social Security Commissioner without cause, the Commissioner argues that Plaintiff fails to state a Constitutional claim for two reasons.    Def. Br. at 2.    First, the Commissioner argues the removal restriction lacked any nexus with Plaintiff's alleged harm because the adjudicating ALJ was appointed by an Acting Commissioner[2] who was removable at will.    Second, the Commissioner argues that Plaintiff cannot show the statutory tenure protection affected the ALJ's adjudication of his claim.    *Id.* at 4, 6.    The court agrees.

Recently, District Judge Ann Aiken addressed nearly identical arguments in *Nathanial H. v. Kijikazi*, Case No. 6:19-cv-01280-AA, 2021 WL 5921377 at *4-6 (D. Or. Dec. 15, 2021). There, Judge Aiken held that, even though the removal restriction of section 902(a)(3) violated separation of powers, it did not render the Acting Commissioner's appointment void or invalidate the Acting Commissioner's authority.    *Id.* at *5.    Judge Aiken thus concluded that the unconstitutionality of the removal provision did not independently require reversal of the ALJ's decision.    *Id.*    Other courts throughout the country have also considered these arguments in the same or similar contexts and reached the same conclusions.    *See e.g.*, *Tibbetts v. Comm'r of Soc.*

---

[2]  The ALJ who adjudicated Plaintiff's claim on March 25, 2020, held office under an appointment legally ratified by then-Acting Commissioner Nancy Berryhill.

*Sec.*, Case No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021) (even assuming section 902(a)(3) is unconstitutional, "the removal provision does not necessitate remand or a rehearing of Plaintiff's claim"); *Perez-Kocher v. Comm'r of Soc. Sec.*, Case No. 6:20-CV-2357-GKS-EJK, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021) (holding that because the plaintiff could not establish the tenure provision caused compensable harm, the plaintiff had failed to state a claim upon which relief could be granted).

The court finds Judge Aiken's rationale sound and no reason to depart from it.   Thus, the court adopts it here.   Accordingly, the court concludes that the removal restriction does not independently require the court to reverse the ALJ's decision in this case.

*Standard of Review*

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).   Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).   To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.   *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009.   "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner."  *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

\ \ \ \ \

*Discussion*

I.    The ALJ Erred in Evaluating Plaintiff's Subjective Symptom Testimony

    *A.*    *Standards*

    To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo*, 871 F.3d at 678; 20 C.F.R. §§ 404.1529, 416.929.    The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).    At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.    *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

    The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).    Clear and convincing reasons for rejecting a claimant's subjective symptom testimony include "conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

\ \ \ \ \

B.    *Plaintiff's Symptom Testimony*

In May 2018, prior to the hearing, Plaintiff submitted a Function Report.    Tr. 198-205.    In that report, Plaintiff explained that his pancreas caused him severe pain and, as a result, he needed assistance and pain medication to function most days.    Tr. 198-99.    He indicated he often could not sleep without medication.    Tr. 199.    Plaintiff explained that the pain limited his ability to cook and complete chores like cleaning, laundry, and mowing.    Tr. 201.    Plaintiff stated he cannot drive while taking his medication, because the medication makes it difficult for him to focus and concentrate.    Tr. 202, 204.    Plaintiff explained that if he is well enough to focus, he occasionally watches television or plays video games.    Tr. 202.

At the hearing, Plaintiff testified that in the months leading up to his alleged onset date, pain from his pancreatitis caused him to miss work often.    Tr. 39.    Plaintiff testified his pain was "there all the time."    Tr. 47.    At times, Plaintiff described his abdominal pain as so intense it caused him to vomit and made unable to move beyond lying on the couch.    Tr. 40.    Plaintiff estimated he had missed about thirty days of work in the final six months of his employment.    Tr. 40.    Plaintiff testified that his employer offered him a part-time position at the sales counter, but he refused the position due to his pain level, weakness, and unclear thoughts.    Tr. 41.

Plaintiff testified that he has been hospitalized twice for complications and pain from his pancreatitis.    Tr. 43.    He explained his doctor had suggested a stent placement in his pancreas for treatment, but ultimately determined there was more risk than reward.    Tr. 45.    He testified his doctors had explained there was "nothing" he could do for his pancreatitis except "take care of it," particularly by monitoring his diet.    Tr. 45-46.

Plaintiff testified that he generally eats only once a day to avoid triggering the pain of his pancreatitis.    Tr. 42.    As a result, Plaintiff described he lost approximately 70 pounds over about

Page 7  – OPINION AND ORDER

five years.   Tr. 43.   He stated that although he tries to avoid food triggers, he sometimes eats foods—such as hamburgers—that he knows will cause him pain, to try to gain weight and eat something.   Tr. 44.   Plaintiff testified that he still drinks an occasional light beer in social settings and he drinks approximately four beers a month.   Tr. 46, 49-50.   He testified that his pancreas flares up when he eats a hamburger, but not when he drinks a light beer.   Tr. 47.   Plaintiff explained that, although his pain is constant, he sometimes suffers from "acute flare-ups" that can last "two to five days."   Tr. 49.   On those days, he described remaining in bed all day and all night and being unable to sleep.   Tr. 48.   Plaintiff testified that, when his medications reduced his pain, he sometimes worked in the garden with his wife.   Tr. 48.

C.    *Analysis*

In the decision, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms.   However, the ALJ provided four reasons for discounting the intensity, persistence, and limiting effect of Plaintiff's subjective symptom testimony: (1) his complaints were inconsistent with the medical evidence; and (2) he occasionally uses alcohol against medical advice; (3) he had not taken medication as prescribed and testified inconsistently about its side effects; and (4) his allegation of total disability was inconsistent with some of his activities.   After careful examination, the court concludes that the ALJ's reasons are neither clear nor convincing.

1.    objective medical evidence

Contradiction with the medical record is a relevant consideration in discounting a claimant's subjective symptom testimony.   *Carmickle*, 533 F.3d at 1161; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding that ALJ may consider lack of medical

evidence but it cannot be the only factor supporting an adverse credibility finding); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (same).

In the decision, the ALJ concluded that Plaintiff's complaint of debilitating pain from his pancreatitis are not fully supported by the medical record.   Tr. 21.   The ALJ noted that medical records indicated Plaintiff has been diagnosed with pancreatitis, which began as an alcohol-induced impairment and was now chronic.   Tr. 22, 433, 437, 472.   The ALJ also noted that a 2018 MRI of Plaintiff's abdomen showed findings consistent with chronic pancreatitis, while Plaintiff's other organs are unremarkable.   Tr. 22.   Beyond that analysis, the ALJ cited to two Progress Notes, March 8, 2019 and May 30, 2019, taken by Plaintiff's treating pain management specialist, Machelle Dotson, PA-C.   Summarizing the March 2019 progress note, the ALJ wrote that Plaintiff "stated that his symptoms were either none or a mild dull pain."   Tr. 22, 564.   The ALJ summarized the May 2019 note as the Plaintiff "stated that he only had one severe attack of pancreatitis in the last month" and that his pain symptoms were "better controlled with medication."   Tr. 22, 551.   From this and the below-discussed evidence, the ALJ concluded Plaintiff's symptom testimony was not consistent with medical evidence.

The ALJ's summary of the medical evidence and generalized finding that it contradicts Plaintiff's testimony is legal error.   *See Brown-Hunter*, 806 F.3d at 489 (holding ALJ committed legal error by failing to identify which testimony was not credible and why); *Burrell v. Colvin*, 775 F.3d 1133, 1138-39 (9th Cir. 2014) (holding the ALJ must identify specific facts in the record that undermine claimant's testimony, and that generalized findings are insufficient).   As an initial matter, the MRI cited by the ALJ demonstrates that Plaintiff has indeed been diagnosed with pancreatitis.   Similarly, the remaining evidence referenced by the ALJ—the March and May 2019 Progress Notes—do not undermine Plaintiff's symptom allegations.   In fact, these reports are

Page 9  – OPINION AND ORDER

largely consistent with Plaintiff's testimony that, while his pain is constant, it waxes and wanes in intensity when he suffers from "flare ups."  *Compare* Tr. 395, 398, 401, 527, 547, 564, 568 (reporting periods of minimal pain in three months of 2018 and four months of 2019) *with* Tr. 398, 392, 408, 527, 543, 551, 560, 572, 576 (reporting intense pain in three months of 2018 and five month of 2019).   In short, the ALJ improperly "cherry-picked" evidence in which Plaintiff reported only mild or no pain and has failed to identify how such instances are inconsistent with Plaintiff's testimony relating to his severe pain.   *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (*quoting Garrison*, 759 F.3d at 1017-18) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").   Accordingly, the court concludes the ALJ's first rationale fails to provide a specific, clear, and convincing reason for discounting Plaintiff's subjective symptom testimony.

 2.    Plaintiff's alcohol use

The ALJ next discredited Plaintiff's symptom testimony by observing Plaintiff "testified that he continues to occasionally drink alcohol" despite treatment notes recommending against alcohol use.   Tr. 22.   The ALJ referenced January and February 2018 assessments by Dr. Harald Schoeppner, a gastroenterologist, advising "absolute alcohol abstinence," as well as a February 2019 note from Plaintiff's pain management treatment specialist advising "caution with alcohol, avoid if using pain medication on that day."   Tr. 440, 454, 571.   Although the ALJ did not expressly indicate how this observation weighed in discounting Plaintiff's symptom testimony, the Commissioner suggests the ALJ was "properly relying on [Plaintiff's] unexplained or inadequate

failure to . . . follow a prescribed course of treatment when evaluating credibility." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).   (Defendant's Brief at 4).

Although originally induced by "drinking daily" over a decade ago, medical reports indicate Plaintiff's pancreatitis is now a chronic condition.   Tr. 437, 478.   At the hearing, the ALJ elicited testimony suggesting that, while Plaintiff still drinks beer on occasion, his use has substantially reduced in recent years.   Prior to 2019, Plaintiff estimated drinking one to two light beers "just a few times a week," often socially.   Tr. 50.   This testimony is consistent with a July 2018 progress note, which recites: "he states he will have a beer on occasion if one of his buddies stop[s] by to visit."   Tr. 52, 386.   The treatment note also observes that Plaintiff's "levels are consistent with [his] stated use."   Tr. 368.   In a March 2018 pain management note, Plaintiff indicated he "last utilized alcohol over the Christmas Holidays, where he had [two] light beers that did not aggravate his pain."   Tr. 401.   As of May 2019, Plaintiff estimated drinking approximately "four beers over the course of the month socially."   Tr. 50.

Plaintiff consistently stated, in medical reports and testimony, that he did not experience flare ups of pain after drinking a light beer.   Tr. 46-47, 401, 386 ("states that alcohol does not aggravate the pancreatitis").   Instead, he testified that his flare ups often correlate with the type or amount of food that he eats.   Tr. 47.   To prevent these flare ups, Plaintiff explained he has adjusted his diet to avoid—with the exception of the occasional hamburger—fatty foods.   Tr. 46, 564.   He also states that he best controls his symptoms by eating small snacks, rather than large meals.   Tr. 564.

Viewed in light of the record as a whole, Plaintiff's occasional alcohol use is not a clear and convincing reason to discredit his symptom testimony.   First, the treatment notes on which the ALJ relied are inconsistent in banning Plaintiff's alcohol use.   While Dr. Schoeppner's

Page 11  – OPINION AND ORDER

assessment plan advises absolute alcohol abstinence, treatment notes by Plaintiff's pain management specialist indicate she was aware of Plaintiff's infrequent drinking and discouraged it primarily when using his medication.   Second, Plaintiff's testimony demonstrates significant reduction in his beer consumption in the past five years—from daily use a decade ago to "four a month" in social settings in 2019.   The notes also suggest Plaintiff has, at times, gone several months without consuming a beer.   In light of this trend, Plaintiff's infrequent alcohol use, while not absolute abstinence, demonstrates at least partial compliance with medical advice.   Third, Plaintiff consistently testified that food, rather than alcohol, appeared to be the trigger for his symptoms.   To avoid that trigger, Plaintiff has significantly modified his diet, cutting out fatty foods and large meals.   Viewed in this light, Plaintiff's decision to drink an occasional light beer is insufficient to constitute a clear and convincing reason to discredit his testimony., the ALJ's reasoning is not supported by substantial evidence and the ALJ erred in discrediting Plaintiff's testimony on this basis.

> 3.    use and side effects of medication

The ALJ next discredited Plaintiff's symptom testimony by suggesting "the claimant has not taken in medication as prescribed."   Tr. 22.   The ALJ also noted that Plaintiff's testimony about the side effects of his medication was not entirely consistent with the record.   Tr. 22.

The ALJ's reasoning that Plaintiff was not taking his medications as prescribed is not supported by substantial evidence.   The ALJ cited an April 2019 progress note from Plaintiff's pain management treatment center in which he reported "he has been in so much pain for week and a half now because he ran out of his medication.   He didn't try to call us to let us know about it."   Tr. 22, 560.   Plaintiff also reported he had been inactive, unable to shower, and vomited from pancreatic attacks.   Tr. 560.   Upon closer inspection, however, the note indicates that at the time,

Page 12  – OPINION AND ORDER

Plaintiff was prescribed Hydromorphone to be used on an "as needed" basis.  Tr. 560, 566.
Plaintiff was given 70 tablets that were expected to last 28 days (2.5 tablets per day), but However,
he ran out of those tablets early because pain flare ups sometimes drove him to take up to eight
tablets per day.  Tr. 562, 566.  After the April 2019 pain management check-in, Plaintiff was
prescribed extended-release tablets for daily pain control and quick acting morphine on an "as
needed" basis to avoid "early outs."  *See* Tr. 562.  Because plaintiff was taking his medication
"as needed" to manage his pain, the suggestion that he was not taking his medication as prescribed
is unsupported by the record.

The ALJ's decision to discredit Plaintiff's testimony about the side effects of his
medication, however, is supported by the record.  At the hearing, Plaintiff testified that his
medication "sometimes makes me a little loopy," thus inhibiting his ability to work full-time.
However, throughout the record, Plaintiff frequently indicated "no side effects" from medication
at his pain management consultations.  Tr. 411, 551, 560.  Given this inconsistency, the ALJ
reasonably discounted Plaintiff's testimony regarding the side effects of his medication.
Nevertheless, because Plaintiff alleges that pain—not medication side effects—is the primary
source of his limitation, this inconsistency has little bearing on Plaintiff's overarching symptom
testimony.

4.    activities of daily living

Activities of daily living may provide a basis for discounting a claimant's subjective
symptoms if they contradict his testimony or meet the threshold for transferable work skills.
*Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *superseded by regulation on other
grounds as stated in Schuyler v. Saul*, 813 F. App'x 341, 342 (9th Cir. 2020).   However, a claimant
does not need to be utterly incapacitated to receive disability benefits, and a claimant's ability to

complete certain routine activities is insufficient to discount subjective symptom testimony. *Molina,* 674 F.3d at 1112-13 (observing that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found that Plaintiff's report of doing "outside activities and gardening" demonstrated his impairment was not as limiting as alleged. Tr. 22. The court disagrees. At the hearing, Plaintiff testified that, on good days and with the assistance of "heavy drugs," he liked to work in the garden with his wife, tending to his tomato plants. Tr. 48. He described that his wife digs holes, and he plants the pots in the soil (Tr. 48), but that he engages in few other activities. In his function report, Plaintiff stated his pain generally inhibits his ability to cook, complete chores, drive, and shop for groceries, and that he spends a great deal of time lying down. Tr. 201. He occasionally watches TV or plays videogames. Tr. 202. These minimal activities are insufficient to discount his symptom testimony. *See Garrison*, 759 F.3d at 1017 (finding ability to perform minimal activities of daily living is not inconsistent with disability). In summary, the ALJ's findings are not supported by substantial evidence in the record and fail to provide a specific, clear, or convincing reason to reject his subjective symptom testimony. The ALJ erred.

II.    The ALJ Erred in Evaluating Dotson's Medical Opinion

Plaintiff argues the ALJ committed harmful error in considering the medical opinion evidence submitted by his pain management specialist, Machelle Dotson, PA-C ("Dotson"). (Pl. Br. at 5). Plaintiff argues the ALJ's conclusion that Dotson's medical opinion evidence was "unpersuasive" was not based on the correct legal standards. (*Id.* at 8). The Commissioner

argues the ALJ's evaluation of that opinion was reasonable and consistent with the new Social Security regulations.   (Def. Br. at 6).   As explained below, the ALJ erred.

> A.      Standards – Medical Opinions

Plaintiff filed his application for benefits March 28, 2018.   Tr. 16.   For claims filed on or after March 27, 2017, 20 C.F.R. § 416.920c governs how an ALJ evaluates medical opinion evidence under Title XVI.   *Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017); *Tanya L. L.*, 526 F. Supp. 3d at 866 (recognizing that new regulations apply).   The new regulations provide that the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive."   20 C.F.R. § 416.920c(a)-(b).   The ALJ evaluates the persuasiveness of all medical opinions based on:   (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."    20 C.F.R.  §  416.920c(a),  (c)(1)-(5).    "Supportability"  and "consistency"  are  "the  most  important  factors"  in  the  evaluation  process.    20  C.F.R.  § 416.920c(c); *Jessica S. v. Comm'r Soc. Sec. Admin.*, Case No. 6:20-cv-01073-YY, 2021 WL 6144186, at *5 (D. Or. Dec. 31, 2021).

The new regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b); 416.920c(b); *Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020).   An ALJ is not required to explain how they considered the secondary factors unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical.   *Tyrone*, 2020 WL

Page 15  – OPINION AND ORDER

6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)).    Finally, the court must

consider whether the ALJ's analysis is supported by substantial evidence.    *See Tyrone*, 2020 WL

6363839, at *6; 42 U.S.C. § 405(g).

      B.     *Dotson's Medical Opinion Evidence and ALJ Assessment*

      Plaintiff began treating with Dotson at Columbia Pain Management, P.C. in March 2018,

after his medical providers opined that the benefits of surgically treating Plaintiff's pancreatitis

were generally outweighed by the risks.    *See* Tr. 361 ("[T]here may be benefit in determining

whether he has developed a stricture.    But the risks of endoscopic therapy are great").    At the

time, Plaintiff was not working and unable to exercise due to his pain, which could only be

managed by medications.    Tr. 402.    Over the next two years, he had regular pain management

appointments with Dotson for check-ins, counseling, and medication prescriptions.    Tr. 401-431.

From month-to-month, Plaintiff reported suffering from varying levels of pain.    *See* Tr. 395, 411,

531, 535, 547, 564, 568 (reporting decreased or manageable pain at appointments in April 2019,

September 2018, February 2019, March 2019, June 2019, September 2019); Tr. 389, 392, 408,

527, 576 (reporting flare ups in pain at appointments in May 2018, June 2018, October 2018,

January 2019, May 2019, and November 2019).

      In February 2020, Dotson completed a check-box medical source statement regarding

Plaintiff's ability to perform work-related activities.    Tr. 584-589.    On the form, she opined that

Plaintiff is limited to working part time, ten-to-twenty hours a week, but needed "flexibility in

scheduling, frequent long extended breaks, [and] work from home at times."    Tr. 584.    She noted

Plaintiff's pain level would dictate his availability and that his inability to drive due to medications

would cause transportation issues.    Tr. 584.    She further opined that, depending on his daily pain

level, Plaintiff could sit, stand, and walk for 1-4 hours each; frequently operate foot controls;

Page 16  – OPINION AND ORDER

frequently reach, handle, finger and feel; occasionally perform postural activities; and never to frequently be exposed to certain work environments.    Tr. 585-589.    She noted Plaintiff's impairments affect his vison and hearing:   he has blurry vision at times, and he can work in an environment with moderate noise.    Tr. 587.    Dotson also stated Plaintiff's judgment can be affected by his pain, medication, and mood.    Tr. 589.    Finally, she opined that Plaintiff could, at times, use public transportation (though not always without assistance); shop; prepare a simple meal; and sort, handle, and use paper files.

After summarizing Dotson's medical source statement in the opinion, the ALJ found her statement "unpersuasive for several reasons."   Tr. 23.   In simple sentences, the ALJ explained the reasons: (1) Question "X" is moot because it has different handwriting, is not fully answered, and is unclear; (2) Dotson appears to base her opinions on Plaintiff's subjective complaints rather than objective medical evidence; (3) Dotson provided little-to-no analysis to support her opinions; (4) Dotson's opinion that the Plaintiff's abilities vary from day-to-day is "vague and does not contain a specific vocational limitation; (5) the wide variety of activities Dotson stated Plaintiff could perform was inconsistent with the severity of her opinion; and (6) the medical evidence of record does not support the severity of her opinions.

C.    *Analysis*

Plaintiff and the Commissioner assert several arguments regarding the proper standard of reviewing an ALJ's assessment of medical opinion evidence.    To circumvent the need to address each of these arguments directly, the court reiterates that the standard governing this review is set forth in the new regulations, 20 C.F.R. § 416.920c, and to the extent prior case law conflicts with this standard, it lacks precedential weight.    Accordingly, in evaluating the ALJ's consideration of

Dotson's medical opinion evidence, the court examines whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of Dotson's opinion.

The ALJ briefly listed six reasons for finding Dotson's opinion unpersuasive, but this evaluation did not meet the standards set forth under the new regulations because the ALJ failed to "explain how [he] considered the supportability and consistency factors." *See Patricia F. v. Saul*, 2020 WL 1812233 at *4 ("At the least, this [standard] appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of the medical opinion.").   Further, even to the extent the ALJ's stated reasons were implicitly directed at the supportability, they are not supported by substantial evidence.

    1.    Supportability

Under the supportability factor, more weight is generally accorded to medical opinions that are supported by "relevant medical evidence" and the medical source's explanation.   20 C.F.R. §§ 404.1520(c)(1); 416.920c(c)(1).   The Commissioner suggests the ALJ implicitly discussed the "supportability" of Dotson's opinion through two rationales: (1) the ALJ's concern about the different handwriting in Question X and (2) that Dotson's opinion was based on Plaintiff's subjective complaints rather than objective medical.   Arguably, the ALJ's third and fourth rationales—that Dotson's opinions were vague, lacked a specific vocational limitation, and included little analysis—also indirectly discussed supportability.   However, as Plaintiff correctly argues, these rationales are insufficient to discount the supportability of Dotson's opinion.

First, the ALJ's concern about the handwriting in Question X is valid, but it has little bearing on the remainder of Dotson's medical source statement.   As the penultimate question in the source statement, Question X asks, "Would the above stated limitations have applied between these following dates?"   Tr. 589.   In handwriting that appears to differ from Dotson's style, the

dates written are "December 2017" to "February 2020." Tr. 589. While this distinction is notable and the ALJ did not err in considering that answer moot, it has little to no effect on the supportability of the limitations opined by Dotson in the source statement as a whole. *See Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016).

Similarly, the ALJ's second rationale—that Dotson's opinion relied on Plaintiff's subjective complaint instead of objective medical evidence—is not supported by substantial evidence in the record. As Plaintiff notes, Dotson's opinion of his limitations was more moderate than Plaintiff at times alleged. *Compare* Tr. 203 (Plaintiff reported he "cannot walk for any length of time due to pain") *with* Tr. 585 (Dotson's opinion that Plaintiff could walk 1-4 hours a day, varying from day-to-day). Consequently, contrary to the ALJ's assertion that Dotson relied solely on Plaintiff's subjective complaints, Dotson's assessment of moderate functional limitations instead reflects her professional judgment.

The ALJ's remaining assessments that Dotson's opinion was vague, supported by little analysis, and lacked a specific vocational limitation ignored supporting documents from the broader record. (Pl. Br. at 10). In particular, Dotson's longitudinal treatment notes, which chronical Plaintiff's variable pain levels and functioning over the course of two years, support Dotson's functional limitations noted in her medical source statement. These treatment notes provide context for and explain Dotson's opinion that Plaintiff's ability to function "varies day to day depending on pain." Tr. 587. Because Dotson's opinion is supported by the record, the ALJ's determination that it was "unpersuasive" is not supported by substantial evidence.

2.    Consistency

Generally, medical opinions that are consistent with the record as a whole are accorded more weight than those that are not. 20 C.F.R. §§ 404.1527(c); 416.927(c)(6). Here, the ALJ

Page 19 – OPINION AND ORDER

addressed consistency more explicitly than the supportability factor, reasoning that the wide variety of activities Dotson stated Plaintiff could perform was inconsistent with the severity she noted in her opinion, and that medical evidence did not support Dotson's severity opinions. Neither rationale is supported by substantial evidence.

First, Plaintiff's activities of daily living were minimal and dependent on his ability to manage his pain level with medication.   Dotson's source statement reflects that concern.   After nearly every check-box question, Dotson noted her opinion of Plaintiff's ability was contingent on his pain level.   *See* Tr. 584-589 (including notes such as "when pain levels allow," ability "would vary from day to day," and "varies on pain levels").   Given these notes, Dotson's opinion that Plaintiff could perform certain activities depending on his pain level is not inherently inconsistent.

Second, while the ALJ stated Dotson's opinion was inconsistent with medical evidence, he did not specify what evidence he was considering.   The Commissioner suggests the ALJ relied on the reviewing opinions of two state-agency medical consultants for this assessment ("reviewing source opinions"), but even so, that argument is unpersuasive.   The reviewing source opinions, which found Plaintiff capable of a "medium" range of work, facially appear inconsistent with Dotson's opinion.   Tr. 71, 80-81.   On closer inspection, however, that inconsistency is minimal: the opinions were offered after reviewing the record as it existed in February 2018, early in Plaintiff's diagnosis and before the record contained notes from a treating medical source.   Tr. 71, 80-81.   In contrast, Dotson's gave her opinion in February 2020 and based it on a two-year treatment relationship with Plaintiff.   Given its recency and Dotson's treatment relationship with Plaintiff, Dotson's medical opinion should have been accorded more weight than that of the reviewing medical consultants.

\ \ \ \ \

Page 20  – OPINION AND ORDER

3.      Relationship with Plaintiff

Finally, while the ALJ was not required to articulate how he considered the remaining factors articulated under the new regulations, these factors further support finding Dotson's opinion persuasive.   Under the new regulations, an ALJ should consider the medical source's relationship with the Plaintiff, including the length frequency, purpose, and extent of the treating relationship.   20 C.F.R. §§ 404.1520c(c)(3); 416.920(c)(3).   Plaintiff began treating with Dotson in March 2018 for palliative care, after his doctors determined surgery carried undue risks.   Tr. 361.   The record demonstrates that, during the next two years, Plaintiff had near-monthly appointments with Dotson for pain management assessment and medication.   Tr. 401-431. Given this relationship, these factors also lend persuasive weight to Dotson's opinion.

III.    The ALJ's RFC Is Not Supported by Substantial Evidence

The ALJ improperly discredited Plaintiff's testimony Dotson's medical opinion evidence. By failing to incorporate all of Plaintiff's limitations into the RFC and, by extension, the dispositive hypothetical question posed to the VE, the ALJ's conclusion lacks evidentiary support. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.") (internal citation omitted).   As such, the ALJ's step five finding is not supported by substantial evidence.

IV.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court.   *Treichler*, 775 F.3d at 1101-02.   A remand for award of benefits is generally appropriate when:   (1) the ALJ failed to provide legally sufficient

reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

Plaintiff argues that an award for an immediate payment benefits is required because when his testimony and Dotson's opinion are properly credited, the vocational testimony elicited at the hearing establishes that he is unable to sustain competitive employment. The Commissioner contends that remanding the case is appropriate because there are conflicts in the record that demonstrate additional limitations in the Plaintiff's RFC are unnecessary. The court disagrees.

At hearing, the vocational expert testified that being "off task twenty percent of the day or absent two or more days a month" would eliminate competitive employment. Tr. 61. Plaintiff's testimony and Dotson's opinion, when credited as true, strongly indicate Plaintiff would miss at least that much work monthly. The record reveals that Plaintiff frequently suffers from flare-ups in pain caused by his pancreatitis. Tr. 389, 392, 408, 527, 576. While unpredictable, the record reflects these flare ups occur on a near monthly basis, particularly in the winter. Tr. 389, 392, 408, 527, 568, 576. Plaintiff testified, and treatment notes support, that when these flare-ups occur, they often render him incapacitated for two-to-five days. Tr. 49, 527, 576. In addition to flare ups, Plaintiff testified he suffered from near-constant moderate pain. Tr. 47. Consistent with these subjective complaints, Dotson opined Plaintiff could work ten-to-twenty hours a week,

Page 22 – OPINION AND ORDER

but would need "flexibility in scheduling, frequent long extended breaks, [and] work from home at times."  Tr. 584.

Where a Plaintiff meets all three criteria of the credit-as-true standard, a remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act."  *Garrison*, 759 F.3d at 1020-21 (citations omitted).  Carefully considering the record as a whole, there is no "serious doubt" that Plaintiff is in fact disabled.[3]  *See id.* at 1021; *see also Revels*, 874 F.3d at 668 n.8 (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled").  Accordingly, the Court exercises its discretion and credits the erroneously discredited evidence as true and remands this case for an immediate calculation and payment of benefits.

*Conclusion*

Based on the foregoing, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision that Plaintiff was not disabled is REVERSED and REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 14th day of February, 2022.

_____
JOHN V. ACOSTA
United States Magistrate Judge

---

[3] On May 5, 2021, Plaintiff's attorney submitted an April 22, 2020 letter from plaintiff's pain management specialist, Machelle Dotson, PA-C.  Consistent with her medical source statement, Dotson explained that "Chronic pancreatitis can be inconsistent with it's [sic] symptoms.  He would not be able to work a consistent shift or consistent days.  He would need frequent breaks to lay down when pain levels dictate.  There are times that the pain flares only last 30-60 minutes and times they last for days, there is no predicting this."  Tr. 12.  Dotson's letter further supports the court's reversal and its conclusion that there is no serious doubt that Plaintiff is disabled.